UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
MONROE DIVISION

**KIMBALL NEVIS**                            **CIVIL ACTION NO. 22-5986**

                                           **SECTION P**

**VS.**

                                           **JUDGE DONALD E. WALTER**

**MR. BOWAN, ET AL.**                   **MAG. JUDGE KAYLA D. MCCLUSKY**

## REPORT AND RECOMMENDATION

Plaintiff Kimball Nevis, a prisoner at Tensas Parish Detention Center proceeding pro se and in forma pauperis, filed this proceeding on approximately November 15, 2022, under 42 U.S.C. § 1983. He names the following defendants: Mr. Bowan, Warden Brian Newcomer, Mr. Randy, and Nurse Wilson.[1] For reasons that follow, the Court should dismiss Plaintiff's claims.

## Background

Plaintiff participated in a welding program at Ouachita Parish Correctional Center. [doc. # 1, p. 3]. On February 12, 2022, while working in the welding shop, he was "stuck" in the finger by a rusted piece of metal on a welding table. *Id.* He claims that after he reported his injury to Mr. Randy, his welding instructor, Randy told Plaintiff to return to work and that the injury was nothing to worry about. *Id.* In an administrative grievance, Plaintiff stated that he "went back to work cutting iron plates." [doc. # 1-2, p. 2].

Plaintiff claims that Randy disregarded policy concerning injuries in a work environment. [doc. # 5, p. 3]. Randy allegedly failed "to ensure that [Plaintiff] received medical treatment

---

[1] This matter has been referred to the undersigned for review, report, and recommendation under 28 U.S.C. § 636 and the standing orders of the Court.

once [Randy] was personally informed by [Plaintiff] and made an assessment of [Plaintiff's] injuries[.]" *Id.*

Plaintiff claims further that Randy delayed his medical treatment by opining to medical staff that Plaintiff did not need medical care. [doc. # 1, p. 6]. He states that Randy was not qualified to assess his injury. [doc. # 5, p. 3]. Plaintiff later received two surgeries on his hand; he postulates that the surgeries "might not have been necessary had [Randy] followed 'policy or protocol' . . . ." *Id.*

On February 14, 2022, Plaintiff's finger became "extremely swollen and infected[.]" [doc. #s 1, p. 3; 1-2, p. 1]. He told Nurse Wilson that rusty metal stuck and entered his hand. [doc. # 5, pp. 1-2]. Nurse Wilson prescribed him ibuprofen and antibiotics. [doc. # 1, p. 3]. Plaintiff suggests that Nurse Wilson failed to provide emergency medical care. *Id.* at 6. In an amended pleading, Plaintiff claims that Nurse Wilson was negligent for "giving insufficient medical treatment." [doc. # 5, p. 1]. He faults Wilson for failing to refer him for a second opinion "or a more qualified assessment" and failing to "administer a tetanus shot or anything of that nature . . . ." *Id.*

On February 15, 2022, Plaintiff returned to the infirmary because his entire hand was then swollen. [doc. #s 1, p. 9; 1-2, p. 1]. He was transported to Conway Hospital, where he received two surgeries on his hand to remove the infection. [doc. #s 1, p. 6; 1-2, p. 1]. He now has limited use of his hand. [doc. # 1, p. 4].

Plaintiff claims that Warden Newcomer denied his administrative remedy grievance. *Id.* at 6, 8. In an amended pleading, Plaintiff claims that Newcomer was negligent in his duty to ensure (1) "that all of his instructors and teachers are taught and made aware of how to handle injury" and (2) that "the policy in place is followed." [doc. # 5, p. 2]. He alleges that

2

Newcomer's negligence "was a contributing factor in [his] injury not being taken seriously, which led to [his] injury becoming more severe . . . ." *Id.*

Plaintiff alleges that Newcomer transferred him to another facility to dissuade him from "pursuing further remedy." *Id.*

Plaintiff concludes generally that officials breached their duties to provide adequate medical care and treatment, delaying treatment until his "condition was grossly deteriorating and infection was spreading . . . ." [doc. # 1, p. 5]. He also states that "officials were all 'under the impression' that [he] was faking injury . . . ." *Id.* at 8.

Plaintiff seeks punitive damages for the loss of use of his hand and compensatory damages for "any and all negligence . . . ." [doc. # 1, p. 4].

## Law and Analysis

### 1. Preliminary Screening

Plaintiff is a prisoner who has been permitted to proceed in forma pauperis. As a prisoner seeking redress from an officer or employee of a governmental entity, his complaint is subject to preliminary screening pursuant to 28 U.S.C. § 1915A.[2] *See Martin v. Scott,* 156 F.3d 578, 579-80 (5th Cir. 1998) (*per curiam*). Because he is proceeding in forma pauperis, his Complaint is also subject to screening under § 1915(e)(2). Both § 1915(e)(2)(B) and § 1915A(b) provide for *sua sponte* dismissal of the complaint, or any portion thereof, if the Court finds it is frivolous or malicious, if it fails to state a claim on which relief may be granted, or if it seeks monetary relief against a defendant who is immune from such relief.

---

[2] Under 28 U.S.C. § 1915(h), "'prisoner' means any person incarcerated or detained in any facility who is accused of, convicted of, sentenced for, or adjudicated delinquent for, violations of criminal law or the terms and conditions of parole, probation, pretrial release, or diversionary program."

A complaint is frivolous when it "lacks an arguable basis either in law or in fact." *Neitzke v. Williams,* 490 U.S. 319, 325 (1989). A claim lacks an arguable basis in law when it is "based on an indisputably meritless legal theory." *Id.* at 327. Courts are also afforded the unusual power to pierce the veil of the factual allegations and dismiss those claims whose factual contentions are clearly baseless. *Id.*

A complaint fails to state a claim on which relief may be granted when it fails to plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007); accord *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009). A claim is facially plausible when it contains sufficient factual content for the court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 570). Plausibility does not equate to possibility or probability; it lies somewhere in between. *Id.* Plausibility simply calls for enough factual allegations to raise a reasonable expectation that discovery will reveal evidence to support the elements of the claim. *Twombly*, 550 U.S. at 556.

Assessing whether a complaint states a plausible claim for relief is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal, supra.* A well-pled complaint may proceed even if it strikes the court that actual proof of the asserted facts is improbable and that recovery is unlikely. *Twombly, supra*.

In making this determination, the court must assume that all the plaintiff's factual allegations are true. *Bradley v. Puckett*, 157 F.3d 1022, 1025 (5th Cir. 1998). However, the same presumption does not extend to legal conclusions. *Iqbal, supra*. A pleading comprised of "labels and conclusions" or "a formulaic recitation of the elements of a cause of action" does not satisfy Rule 8. *Id.* "[P]laintiffs must allege facts that support the elements of the cause of action

in order to make out a valid claim." *City of Clinton, Ark. v. Pilgrim's Pride Corp*, 632 F.3d 148, 152-53 (5th Cir. 2010). Courts are "not free to speculate that the plaintiff 'might' be able to state a claim if given yet another opportunity to add more facts to the complaint." *Macias v. Raul A. (Unknown) Badge No. 153*, 23 F.3d 94, 97 (5th Cir. 1994).

A hearing need not be conducted for every pro se complaint. *Wilson v. Barrientos*, 926 F.2d 480, 483 n.4 (5th Cir. 1991). A district court may dismiss a prisoner's civil rights complaint as frivolous based upon the complaint and exhibits alone. *Green v. McKaskle*, 788 F.2d 1116, 1120 (5th Cir. 1986).

"To state a section 1983 claim, a plaintiff must (1) allege a violation of a right secured by the Constitution or laws of the United States and (2) demonstrate that the alleged deprivation was committed by a person acting under color of state law." *Whitley v. Hanna*, 726 F.3d 631, 638 (5th Cir. 2013) (internal quotation marks omitted). Consistent with the standard above, a "[S]ection 1983 complaint must state specific facts, not simply legal and constitutional conclusions." *Fee v. Herndon*, 900 F.2d 804, 807 (5th Cir. 1990).

**2. Medical Care**

To plead a constitutional violation, a plaintiff "must demonstrate that a government official was deliberately indifferent to 'a substantial risk of serious medical harm.'" *Bailey v. E. Baton Rouge Par. Prison*, 663 F. App'x 328, 330 (5th Cir. 2016) (*quoting Wagner v. Bay City*, 227 F.3d 316, 324 (5th Cir. 2000)). A prison official acts with deliberate indifference to an inmate's health "only if he knows that [the] inmate[ ] face[s] a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." *Farmer v. Brennan*, 511 U.S. 825, 847 (1994); *see Reeves v. Collins*, 27 F.3d 174, 176-77 (5th Cir. 1994) (applying *Farmer* to a denial of medical care claim). A plaintiff must establish that a prison official

5

"refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs." *Gobert v. Caldwell*, 463 F.3d 339, 346 (5th Cir. 2006).

"[N]either an incorrect diagnosis nor the failure to alleviate a significant risk that should have been perceived, but was not, is sufficient to establish deliberate indifference." *Blank v. Bell*, 634 F. App'x 445, 448 (5th Cir. 2016). "Unsuccessful treatment, medical malpractice, and acts of negligence do not constitute deliberate indifference; nor does a prisoner's disagreement with his medical treatment, absent exceptional circumstances. Moreover, a delay in treatment is not unconstitutional, unless there has been deliberate indifference that results in substantial harm. In short, [d]eliberate indifference is an extremely high standard to meet." *Id.* (internal quotation marks and quoted sources omitted); *see Alton v. Tex. A & M Univ.*, 168 F.3d 196, 201 (5th Cir. 1999) ("Actions and decisions by officials that are merely inept, erroneous, ineffective, or negligent do not amount to deliberate indifference."); *Frazier v. Keith*, 707 F. App'x 823, 824 (5th Cir. 2018) ("The choice between forms of treatment is a classic example of a matter of professional judgment and does not support a finding of deliberate indifference.").

### A. Mr. Randy

Plaintiff alleges that after he reported his injury to Mr. Randy, Randy told him to return to work and that the injury was nothing to worry about. [doc. # 1, p. 3]. Plaintiff claims that Randy assessed his injuries yet failed "to ensure that [he] received medical treatment." [doc. # 5, p. 3].

Plaintiff does not, however, plausibly allege that Randy knew of a substantial risk of serious harm. He does not explain the extent or severity of the injury that he presented to Randy. Rather, he alleges only that a rusted piece of metal stuck him in the finger and that he "reported to" Randy and informed Randy of his injuries. [doc. #s 1, p. 3; 5, p. 3]. Absent more, Plaintiff does not plausibly allege that Randy knew anything other than that a rusted piece of metal stuck

Plaintiff's finger and that Plaintiff suffered an unidentified injury.[3] In fact, Plaintiff alleges that his finger became swollen and infected two days *after* he informed Randy of his injury, which suggests that Randy was unaware of any swelling or infection.[4]

In addition, Plaintiff alleges that "officials were all 'under the impression' that" he was malingering or feigning injury. [doc. # 1, pp. 8-9]. Thus, under Plaintiff's allegations, if Randy thought that Plaintiff was feigning injury, Randy did not *know* Plaintiff was exposed to a substantial risk of harm.[5] Moreover, Plaintiff's statement in his attached administrative grievance—that he was able to return "to work cutting iron plates"—further suggests that Randy did not know that Plaintiff was exposed to serious harm. [doc. # 1-2, p. 2].

---

[3] *See Rombach v. Culpepper*, 2021 WL 2944809, at *5 (5th Cir. July 13, 2021) (finding that no defendant knew that the plaintiff was exposed to a substantial risk of serious harm where the plaintiff only told the defendants that he "did not feel well and [that] he wanted to go to the hospital."); *Trevino v. Hinz*, 751 F. App'x 551, 556 (5th Cir. 2018) ("Plaintiffs' own allegations show that Trevino's symptoms were initially ambiguous, and that Officers Hauck and Hinz were therefore not unreasonable in believing she did not require immediate medical attention. Trevino vomited, had several shaking episodes, and told the officers she was sick. None of these symptoms clearly indicated Trevino was undergoing an emergency necessitating immediate medical attention."); *Roberts v. Lessard*, 841 F. App'x 691 (5th Cir. 2021) (Correctional center guards were not subjectively aware that inmate faced substantial risk of harm even though guards were aware that inmate was displaying stroke symptoms; inmate's symptoms, which included sweating, slurring speech, and trouble controlling movements, could also have suggested that he was intoxicated, and it was uncontested that guards believed the inmate was intoxicated).

[4] *See Moler v. Wells*, 18 F.4th 162, 168 (5th Cir. 2021) (finding that an officer did not know that the plaintiff was exposed to a substantial risk of serious harm because the plaintiff did not know the extent of his injury at the time and only told the officer that he felt minor pain in his arm).

[5] *See Cleveland v. Bell*, 938 F.3d 672 (5th Cir. 2019) (noting that "actual knowledge is an essential element" and finding, where a nurse thought there was nothing wrong with Cleveland and believed he was faking illness, that the nurse did not draw the inference that Cleveland was experiencing a life-threatening medical emergency); *Domino v. Texas Dep't of Crim. Just.*, 239 F.3d 752, 756 (5th Cir. 2001) (finding no deliberate indifference where a defendant did not believe the plaintiff's threats of suicide).

Plaintiff claims further that Randy delayed his medical treatment when he reported Plaintiff's injury to medical staff yet offered his lay opinion that Plaintiff did not need medical care. [doc. # 1, p. 6]. Plaintiff later received two surgeries on his hand; he postulates that the surgeries "might not have been necessary had [Randy] followed 'policy or protocol' . . . ." *Id.* But Plaintiff does not plausibly allege that Randy responded with deliberate indifference. He does not allege that by offering an opinion, Randy refused him treatment, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical need. He does not, for example, allege that Randy lied to the medical staff, impeded Plaintiff's ability to request care, or otherwise interfered with the staff's ability to treat Plaintiff. Randy's actions do not reflect the type of "'cold hearted, casual unwillingness to investigate what can be done for a man who is obviously in desperate need of help'" that the Fifth Circuit has "recognized as necessary to constitute deliberate indifference." *See Davis v. Lithicum*, 574 F. App'x 379, 380 (5th Cir. 2014).

At best, Plaintiff's allegations sound in negligence. For instance, he claims that surgery "might not have been necessary had" Randy followed policy or protocol. [doc. # 5, p. 3]. He alleges further that officials breached their "dut[ies]" to provide adequate medical care. [doc. # 1, pp. 5-6]. And even he classifies his claims as negligence. [doc. #s 1, p. 4; 1-2, pp. 1-2]. If Plaintiff wishes to pursue negligence claims, he should do so in state court.

Finally, Plaintiff claims that Randy disregarded policy concerning injuries in a work environment. [doc. # 5, p. 3]. "[T]he failure of prison administrators to follow prison rules and regulations does not, without more, give rise to a constitutional violation." *Moreno v. Bunton*, 193 F.3d 518 (5th Cir. 1999); *see Lewis v. Sec'y of Pub. Safety & Corr.*, 870 F.3d 365, 369 (5th Cir. 2017) ("The [LDPSC] and [Corrections Corporation of America] internal rules and

8

regulations do not alone create federally-protected rights and a prison official's failure to follow prison policies or regulations does not establish a violation of a constitutional right.") (internal footnotes removed). Here, to the extent Plaintiff seeks relief solely for Randy's alleged violation of facility policy, he does not state a plausible claim.

The Court should dismiss these claims.

**B. Nurse Wilson**

On February 14, 2022, Plaintiff's finger became "extremely swollen and infected[.]" [doc. #s 1, p. 3; 1-2, p. 1]. Plaintiff told Nurse Wilson that rusty metal stuck and entered his hand. [doc. # 5, pp. 1-2]. Nurse Wilson prescribed ibuprofen and antibiotics. [doc. # 1, p. 3]. Plaintiff suggests that Nurse Wilson failed to provide emergency medical care. *Id.* at 6. In an amended pleading, he claims that Nurse Wilson was negligent for "giving insufficient medical treatment." [doc. # 5, p. 1]. He faults Wilson for failing to refer him for a second opinion "or a more qualified assessment" and failing to "administer a tetanus shot or anything of that nature . . . ." *Id.*

Plaintiff does not plead a plausible constitutional violation. Rather, he simply disagrees with the care Nurse Wilson rendered. As above, Wilson evaluated him and prescribed ibuprofen and antibiotics. This does not reflect deliberate indifference. *See Petzold v. Rostollan*, 946 F.3d 242, 250 (5th Cir. 2019) ("[B]ecause medical treatment was provided, even if it was . . . based on a perfunctory and inadequate evaluation, it was not denied."); *Adams v. Fuller*, 2022 WL 17250191, at *1 (5th Cir. Nov. 28, 2022) ("[T]he medical records are replete with notes of sick calls, examinations, and diagnoses related to his ear, which further rebut his allegations of deliberate indifference."); *Gibson v. Collier*, 920 F.3d 212, 220 (5th Cir. 2019) ("There is no . . .

claim just because an inmate believes that medical personnel should have attempted different diagnostic measures or alternative methods of treatment.").

To the extent Plaintiff pleads negligence, acts of negligence do not constitute deliberate indifference. As above, if Plaintiff intends to raise negligence claims, he should file his claims in state court.

This Court should dismiss these claims

**3. Defendant Bowan**

Plaintiff claims that Defendant Bowan was negligent by failing to ensure that "the instructor under him knew and complied with policy concerning injury in the class/work area and that instructors reported injury [in] the workplace and that all injuries were taken serious and handled accordingly . . . [sic]." [doc. # 5, p. 1].

Once more, to the extent Plaintiff pleads negligence, allegations of negligence do not state claims of constitutional dimension. *See Daniels v. Williams*, 474 U.S. 327, 336 (1986) (holding that the United States Constitution does not address injuries inflicted by governmental negligence); *Hernandez ex rel. Hernandez v. Texas Dep't of Protective & Regulatory Servs.*, 380 F.3d 872, 882 (5th Cir. 2004) (recognizing that plaintiffs must "demonstrate culpability beyond mere negligence or even gross negligence."); *see also Sanchez v. Swyden*, 139 F.3d 464, 469 (5th Cir. 1998) ("Although we have held that illegal detention by way of false imprisonment is a recognized § 1983 tort, . . . we have required proof that the official's actions went beyond mere negligence before that tort takes on constitutional dimensions.").

To the extent Plaintiff claims that Bowan was more than negligent and failed to adequately train Defendant Randy in adhering to policy, his claim is conclusory.

"A failure to supervise or train claim arises when the plaintiff shows that (1) the defendant failed to supervise or train the alleged bad actor, (2) there is a causal connection between the infringement of the plaintiff's constitutional rights and the lack of supervision or training, and (3) the failure to supervise or train exhibited deliberate indifference to the plaintiff's constitutional rights." *Parker v. Blackwell*, 23 F.4th 517, 525 (5th Cir. 2022) (*citing Peña v. City of Rio Grande City*, 879 F.3d 613, 623 (5th Cir. 2018)). "The infringement of the plaintiff's constitutional rights must be an 'obvious' and 'highly predictable' consequence of the failure to train." *Id.* (*quoting Culbertson v. Lykos*, 790 F.3d 608, 625 (5th Cir. 2015)). "Additionally, relief will not typically be available absent a showing of a pattern of constitutional violations, as opposed to a single incident." *Id.* (*citing Cozzo v. Tangipahoa Par. Council-President Gov't*, 279 F.3d 273, 286 (5th Cir. 2002)).

Here, Plaintiff does not identify any deficiency in training.[6] For example, in *Calhoun v. City of Houston Police Dep't*, 855 F. App'x 917, 922 (5th Cir. 2021), the plaintiff alleged that a defendant failed to train officers to properly make a warrantless arrest. The Fifth Circuit found that the plaintiff "insufficiently pled how [the defendant] failed to train his subordinates . . . ." *Id.*

Nor does Plaintiff plead a pattern of constitutional violations; rather, he only presents a single incident.

The Court should dismiss these claims.

---

[6] *See Roberts v. City of Shreveport*, 397 F.3d 287, 293 (5th Cir. 2005) ("[F]or liability to attach based on an 'inadequate training' claim, a plaintiff must allege with specificity how a particular training program is defective. . . . Plaintiffs cannot prevail by styling their complaints about the specific injury suffered as a failure to train claim."); *Hutcheson v. Dallas Cty., Texas*, 994 F.3d 477, 483 (5th Cir. 2021) ("The complaint also asserts that '[t]he fact that this incident occurred *at all* demonstrates the obvious need for Dallas County to provide its officers with additional or different training.' That allegation is conclusory.").

**4. Warden Newcomer**

Plaintiff claims that Warden Newcomer denied his administrative remedy grievances, which he filed after the surgeries on his hand. [doc. #s 1, pp. 6, 8; 5, p. 2; 1-2, pp. 1, 2].

A prisoner does "not have a constitutional right to have his grievances resolved in his favor or to have his claims reviewed pursuant to a grievance process that is responsive to his perceived injustices . . . ." *Burgess v. Reddix*, 609 F. App'x 211 (5th Cir. 2015); *see Alexander v. Texas Dep't of Criminal Justice*, 2020 WL 826452, at *2 (5th Cir. Feb. 20, 2020) (affirming dismissal of a claim that grievances were mishandled or improperly denied because "prisoners have no due process rights in the inmate grievance process.").

In *Sandin v. Conner*, 515 U.S. 472, 475 (1995), the Supreme Court left prisoners without a federally-protected right to have grievances investigated and resolved. *See Taylor v. Cockrell*, 92 Fed. App'x. 77, 78 (5th Cir. 2004) (holding that "claims that the defendants violated his constitutional rights by failing to investigate his grievances fall short of establishing a federal constitutional claim."); *Geiger v. Jowers*, 404 F.3d 371, 373-74 (5th Cir. 2005) ("[The plaintiff] does not have a federally protected liberty interest in having . . . grievances resolved to his satisfaction. . . . [A]ny alleged due process violation arising from the alleged failure to investigate his grievances is indisputably meritless.").

Plaintiff next claims that Warden Newcomer was negligent in his duty to ensure (1) "that all of his instructors and teachers are taught and made aware of how to handle injury" and (2) that "the policy in place is followed." [doc. # 5, p. 2]. He alleges that Newcomer's negligence "was a contributing factor in [his] injury not being taken seriously, which led to [his] injury becoming more severe . . . ." *Id.*

To reiterate, allegations of negligence do not state claims of constitutional dimension. To the extent Plaintiff claims that Newcomer was more than negligent and failed to adequately train Defendant Randy in adhering to policy, his claim is conclusory because, like the claim above against Defendant Bowan, Plaintiff neither identifies a deficiency in training nor pleads a pattern of constitutional violations.

Finally, Plaintiff alleges that Newcomer transferred him to another facility to dissuade him from "pursuing further remedy." To the extent Plaintiff is claiming that Newcomer violated his right to access the courts, he does not plead a plausible constitutional claim.[7]

To succeed on claim that a defendant is violating a plaintiff's right to access the courts, the plaintiff must show that he lost an actionable claim or was prevented from presenting such a claim because of the alleged denial. *Lewis v. Casey*, 518 U.S. 343, 356 (1996). The "injury requirement is not satisfied by just any type of frustrated legal claim." *Id.* at 353. Rather, a plaintiff must demonstrate that the lack of access prevented him from filing or caused him to lose a pending case that attacks either his conviction or seeks "to vindicate 'basic constitutional rights'" in a civil rights action under 42 U.S.C. § 1983. *Id.* at 353-54 (*quoting Wolff v. McDonnell*, 418 U.S. 539, 579 (1974)).

Here, Plaintiff does not identify a claim, defense, or proceeding that he cannot presently prepare or file, that he could not prepare or file in the past, that he lost, or for which he could not obtain a remedy.

If Plaintiff is simply seeking relief because of his transfer to a different facility, "the Due Process Clause does not, by itself, endow a prisoner with a protected liberty interest in the location of his confinement." *Taylor v. Jagers*, 115 F. App'x 682, 684 (5th Cir. 2004); *see*

---

[7] The undersigned does not recognize a retaliation claim.

*McKune v. Lile*, 536 U.S. 24, 39 (2002) ("It is well settled that the decision where to house inmates is at the core of prison administrators' expertise.").

The Court should dismiss these claims.

### Recommendation

For the reasons above, **IT IS RECOMMENDED** that Plaintiff Kimball Nevis's claims be **DISMISSED** as frivolous and for failing to state claims on which relief may be granted.

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Rule 72(b), parties aggrieved by this recommendation have **fourteen (14) days** from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within **fourteen (14) days** after being served with a copy of any objections or response to the district judge at the time of filing.

**Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in this Report and Recommendation within fourteen (14) days following the date of its service, or within the time frame authorized by Fed. R. Civ. P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error.** *See Douglass v. United Services Automobile Association*, **79 F.3d 1415 (5th Cir. 1996).**

In Chambers, Monroe, Louisiana, this 13th day of January, 2023.

_____
Kayla Dye McClusky
United States Magistrate Judge